**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____
**HERBERT BURGESS**

                                   **Plaintiff,**

        v.                                                           9:05-CV-0379
                                                                                      (NAM)(DRH)

**ALEC H. FRIEDMANN, Chaplain; ROBERT K. WOODS,**
**Superintendent, Upstate Correctional Facility; MARIA**
**TIRONE, Deputy Superintendent, Upstate Correctional**
**Facility,**

                                   **Defendants.**
_____
APPEARANCES:                                OF COUNSEL:

HERBERT BURGESS
Plaintiff, *pro se*

OFFICE OF THE ATTORNEY GENERAL        CHRISTOPHER W. HALL, Esq.
State of New York                                    Assistant Attorney General
Counsel for Defendants

**Hon. Norman A. Mordue, D.J.:**

## MEMORANDUM-DECISION and ORDER

### INTRODUCTION

Plaintiff Herbert Burgess, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), filed this civil rights action pursuant to 42 U.S.C. § 1983 to challenge his removal from the kosher diet. Plaintiff claims the decision to withhold the kosher diet violated his free exercise rights under the First Amendment. Dkt. No. 1.

Presently before the Court is plaintiff's motion seeking an injunction in the form of an order compelling the defendants to provide him with a kosher diet. Dkt. No. 3.

### FACTUAL BACKGROUND

On February 16, 2004, plaintiff and defendant Rabbi Friedmann entered into the Cold Alternative Diet Procedures/Attendance Agreement (the "Diet Agreement"), which provided for

plaintiff to receive a kosher diet. Dkt. No. 20, Friedmann Aff. ¶ 13.[1]  The Diet Agreement was entered into in connection with the discontinuance of a prior lawsuit brought by plaintiff against Friedmann. *See Burgess v. Friedmann*, 9:03-CV-0803 (N.D.N.Y.) ("*Burgess* I"). In the stipulation of discontinuance of *Burgess* I, plaintiff agreed that he would receive the kosher diet "pursuant to the guidelines of that program or any successors to those guidelines." *Burgess* I, Dkt. No. 20.[2]

As stated in the Diet Agreement, plaintiff's right to receive the kosher diet was subject to his strict compliance with the terms thereof. Among other provisions of the Diet Agreement, Paragraph 5 states:

> Should you request another diet, or eat food which is not on the Cold Alternative Diet, or exchange food with another inmate, you will be removed from the Cold Alternative Diet and will not be placed back on it for the duration of your stay at this facility.

*Id.*

On January 10, 2005, after plaintiff had received the kosher diet for approximately eleven months, a corrections officer at Upstate Correctional Facility wrote an inmate misbehavior report against plaintiff, charging him with several rule violations. Dkt. No. 20, Friedmann Aff. ex. C.[3]  The disciplinary report noted that papers detailing the selling of foods from the kosher diet had been found during a search of plaintiff's cell. *Id.*[4]

---

[1] The kosher diet is also referred to as the "Cold Alternative Diet." Friedmann Aff. ¶ 2. The Diet Agreement is attached as exhibit D to the Hall Affidavit submitted in opposition to plaintiff's motion. Dkt. No. 20.

[2] A copy of the Stipulation of Discontinuance in *Burgess* I is attached as exhibit A to the Hall Affidavit. Dkt. No. 20, Hall Aff. ex. A.

[3] Plaintiff was charged with unauthorized exchange, possession of contraband, smuggling, and possession of lottery tickets. *Id*.

[4] Plaintiff was found guilty of the disciplinary charges placed against him on January 19, 2005 (Hall Aff. ex. D), and his appeal was denied on March 14, 2005. Friedmann Aff. ¶ 18.

Upon his arrival at Upstate Correctional Facility on January 13, 2005, defendant Friedmann learned of the disciplinary charges which had been placed against plaintiff. Dkt. No. 20, Friedmann Aff. ¶ 7. Friedmann thereupon reviewed the misbehavior report, and also examined items confiscated from plaintiff's cell. *Id*. ¶ 9. Friedmann states in his affidavit that he concluded on the basis of this information that plaintiff had violated the terms of the Diet Agreement. *Id*. ¶ 11. By memorandum dated January 13, 2005, Friedmann advised plaintiff of his conclusion and that plaintiff would no longer receive the kosher diet. *Id*. at ¶ 11-12 and ex. A.

Plaintiff responded to Friedmann's memorandum stating that he denied the charges and accusing Friedmann of personal bias. *Id*. ¶ 19. By memorandum dated February 10, 2005, Friedmann responded to plaintiff, confirming his removal from the diet based upon his determination that plaintiff had violated the terms of the Diet Agreement. This advice was confirmed to plaintiff again by memoranda dated March 3, 2005 and May 12, 2005. *Id.* ¶¶ 20, 22, 25 and exs. E-G.

Subsequent to his removal from the kosher diet, plaintiff engaged in two brief hunger strikes, during which his condition was closely monitored by the medical staff at Upstate.[5] In March, 2005, plaintiff elected to receive the High Fiber Diet. Dkt. No. 10, Hall Aff. ¶ 12 and ex. J.

## DISCUSSION

**Preliminary Injunction Standard**

A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter." *Patton v. Dole*, 806 F.2d 24, 28 (2d Cir. 1986). In most cases, the party seeking the injunction must show a threat of irreparable injury if the injunction is not granted and either (1) a probability of

---

[5] According to plaintiff's medical records for the period January through June 2005, plaintiff never sought medical attention for hunger or malnutrition. Dkt. No. 20, Hall Aff. ex. K; Dkt. No. 20, Memorandum of Law at 4-6.

3

success on the merits or (2) sufficiently serious questions going to the merits of the claims to make them a fair ground of litigation, and a balance of hardships tipping decidedly in favor of the moving party. *See Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996) (internal quotes omitted). Where, however, a movant seeks relief which will alter, rather than maintain, the status quo, or which will provide him with substantially all the relief sought, the injunction sought is properly characterized as mandatory rather than prohibitory. A party seeking

a mandatory injunction must make a "clear" or "substantial" showing of the likelihood of success, as well as irreparable harm should the injunction not be granted. *See id.* at 473-74. The Court treats the instant motion as seeking mandatory rather than prohibitory relief; accordingly, plaintiff must make a clear or substantial showing of the likelihood of success.

**Irreparable Harm**

In response to plaintiff's motion, defendants take the position that plaintiff's claim that his rights under the First Amendment have been violated by his removal from the kosher diet are sufficient to demonstrate irreparable harm for the purposes of this motion. Dkt. No. 20, Memorandum of Law at 7.

**Likelihood of Success on the Merits**

As noted, plaintiff must also show a likelihood of success on the merits of his claim that he was improperly removed from the kosher diet in violation of his First Amendment rights. The Court again notes that because plaintiff seeks mandatory rather than prohibitory relief, he must make a **clear** showing on this issue.

The Second Circuit has recognized that Free Exercise claims are subject to restriction in the prison environment. "Balanced against the constitutional protections afforded prison inmates,

4

including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) quoting *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990).  The Supreme Court has accorded great deference to the determinations of prison officials and fashioned "a lesser standard of scrutiny ... in determining the constitutionality of the prison rules." *Turner v. Safley*, 482 U.S. 78, 81(1987); see also *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987).  The standard is one of reasonableness, taking into account whether the particular regulation affecting some constitutional right asserted by a prisoner is "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89; *Shabazz*, 482 U.S. at 349; *Benjamin v. Coughlin*, 905 F.2d at 574.[6]  Moreover, once a legitimate penological interest has been put forward to justify an infringement upon a prisoner's religious free exercise, the prisoner bears the burden of showing that these concerns "were irrational." *Fromer v. Scully*, 874 F.2d 69, 74 (2d Cir. 1989 (upholding prison regulation requiring prisoners' beards be no longer than one inch).

     In this case, plaintiff does not claim that the terms of the Diet Agreement are unreasonable, nor does he contend that the terms of that agreement are not reasonably related to legitimate government interests.[7]  Rather, plaintiff claims that defendant Friedmann's decision to terminate him from the

---

[6] While the Court construes this case to involve the reasonableness of the terms of the Diet Agreement, including plaintiff's removal from the kosher diet upon his violation of the terms thereof, the analysis of plaintiff's claim would be also subject to the reasonableness standard if construed as an individual denial of his right to kosher meals. *See Ford v. McGinnis*, 352 F.3d at 595 n.15.

[7] Indeed, plaintiff was afforded full access to the kosher diet, provided only that he abide by the provisions of the Diet Agreement, including the requirement that he adhere to the kosher diet and not exchange the food provided with other inmates.

kosher diet was motivated solely by personal dislike and was therefore improper. Dkt. No. 3 at ¶ 2. Plaintiff also claims that inmates frequently exchange and sell kosher food items, and that he was improperly singled out for disciplinary action.

Plaintiff's claims are not supported in the present record. Plaintiff has not provided any evidence of personal bias or animosity towards him by defendant Friedmann. In this regard, moreover, the Court notes that the chain of events which resulted in his termination from the kosher diet began on January 10, 2005, when a misbehavior report was written against him by a corrections officer at Upstate, and plaintiff has failed to establish any involvement in this matter by Friedmann prior to January 13, 2005, when Friedmann arrived at Upstate and learned of the report.[8] The record is also devoid of any evidence which would even tend to demonstrate that inmates routinely sell and/or exchange kosher food items without repercussion from prison officials.

Plaintiff's mere allegations of wrongdoing are not sufficient to make the clear showing of a likelihood of success on the merits or sufficiently serious questions going to the merits of his claims required for a grant of mandatory injunctive relief.

## CONCLUSION

The Court finds on these motion papers that plaintiff has failed to make a clear or substantial showing of either a probability of success on the merits of his claim or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. Accordingly, plaintiff's motion for preliminary injunctive relief must be denied.

---

[8] Friedmann is based at Clinton Correctional Facility, but is also assigned to number of other facilities, including Upstate. Dkt. No. 20, Friedmann Aff. ¶ 5.

It is therefore

ORDERED, that plaintiff's motion for a preliminary injunction (Dkt. No. 3) is denied, and it is further

ORDERED, that the Clerk serve a copy of this Memorandum-Decision and Order on the parties.

IT IS SO ORDERED.

DATE:     December 22, 2005
          Syracuse, New York

Norman A. Mordue
U.S. District Judge